1
2
3
4
5
6
7
8

FILED
CLERK, U.S. DISTRICT COURT

09/09/16

CENTRAL DISTRICT OF CALIFORNIA
BY:        GR        DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AMANDA P. NGUYEN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

Case No.  CV 15-02099-RAO

**MEMORANDUM OPINION AND
ORDER**

I.     **INTRODUCTION**

Plaintiff Amanda P. Nguyen ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB").   For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

II.    **PROCEEDINGS BELOW**

On January 18, 2011, Plaintiff applied for DIB alleging disability beginning February 26, 2010.   (Administrative Record ("AR") 298).   Her application was denied initially on May 4, 2011, and upon reconsideration on July 14, 2011.  (AR

134-35, 338-51, 360-73.)  On July 20, 2011, Plaintiff filed a written request for hearing, and a hearing was held on July 16, 2012.  (AR 159, 130-33.)  The Administrative Law Judge ("ALJ") continued the hearing because an interpreter, which Plaintiff had requested, was not present.  (AR 132-33.)  A hearing was held on November 28, 2012.  (AR 125-29.)  Plaintiff did not appear, but her attorney was present and told the ALJ that Plaintiff had called to say that she could not attend the hearing because she was "severely ill."  (AR 127.)  Plaintiff's attorney withdrew, and the ALJ dismissed the case.  (AR 127-28, 136-40.)  On April 15, 2013, the Appeals Council vacated the ALJ's order of dismissal and remanded the case for further proceedings.  (AR 142-43.)  A hearing was held on January 27, 2014.  (AR 100-24.)  Represented by counsel, Plaintiff appeared and testified.  (AR 104-06, 113-20.)  An impartial medical expert and an impartial vocational expert also testified.  (AR 107-13, 120-24.)  An interpreter was present to provide assistance when Plaintiff did not understand something.  (AR 102.)  On February 25, 2014, the ALJ found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] from February 26, 2010 through the decision date.  (AR 29.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)  Plaintiff filed this action on December 17, 2015.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 26, 2010, the alleged onset date ("AOD").  (AR 20.)  At **step two**, the ALJ found that Plaintiff has the severe impairments of major depressive disorder, generalized anxiety, degenerative disc

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

disease of the cervical and lumbar spine, tendinitis of the left shoulder, epicondylitis, and mild carpal tunnel syndrome.  (AR 21.)  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (*Id*.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform light work . . . except [Plaintiff] can stand, walk, and sit 6 hours in an 8 hour day; lift/carry and push/pull 10 pounds frequently and 20 pounds occasionally; occasionally stoop, bend, crouch, and crawl; can climb stairs but cannot climb ladders, ropes, or scaffolds; no work at heights; no balance; no extremes of motion of the head such as looking over shoulder; frequent forceful gripping, grasping, and twisting bilaterally; no heavy equipment, motorized vehicles; work around unprotected machinery or work where the safety of others could be compromised; no work above shoulder level; no work at unprotected heights; limited to simple repetitive tasks; only peripheral public contact; occasional contact with coworkers and supervisors; and no jobs requiring team work.

(AR 22.)

At **step four**, based on Plaintiff's RFC and the VE's opinion, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 27.)  At **step five**, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (AR 28.)  Accordingly, the ALJ found that Plaintiff "has not been under a disability . . . from February 26, 2010, through the date of [the ALJ's] decision."  (AR 29.)

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied.

*Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.  **DISCUSSION**

Plaintiff contends that the ALJ:  (1) failed to provide reasons supported by substantial evidence for rejecting the opinion of Agreed Medical Evaluator ("AME") Nelson Flores, Ph.D.;[2] (2) erred in the credibility determination; and (3)

---

[2] Whether Dr. Flores was an AME is unclear from the record, but the record supports that he was a Qualified Medical Evaluator ("QME") and primary treating physician in connection with Plaintiff's workers' compensation claim.  (AR 25, 509-26, 1786.)

erred in her Step Five finding because of an unexplained conflict with the DOT. (Joint Stipulation ("Joint Stip.") at 5-12, 17-18, 18-21, 25-32, 37.)    The Commissioner contends that:   (1) the ALJ properly rejected the opinion of Dr. Flores; (2) the ALJ's credibility determination was proper; and (3) there is no apparent conflict between the VE testimony and the DOT, and therefore, the ALJ did not err in relying on the VE's testimony.   (Joint Stip. at 12-17, 21-26, 32-36.) (Dkt. No. 16.)

### A.    The ALJ Erred In Rejecting Dr. Flores' Opinion

Plaintiff argues that the ALJ's rejection of Dr. Flores' opinion was not supported by substantial evidence because the ALJ selectively cited medical evidence and mischaracterized evidence.   (Joint Stip. at 5-12, 17-18.)    The Commissioner argues that the ALJ properly rejected Dr. Flores' opinion.   (Joint Stip. at 12-17.)  For the reasons set forth below, the Court agrees with Plaintiff.

### 1. Pertinent Law

An ALJ is obligated to consider medical opinions of record, resolve conflicts, and analyze evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); 20 C.F.R. § 404.1527(c).   Courts give varying degrees of deference to medical opinions based on the provider:  (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).   A treating physician's opinion is generally entitled to greater weight than a non-treating physician's opinion, and an examining physician's opinion is generally entitled to greater weight than a non-examining physician's opinion.  *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citations omitted).  If a treating physician's opinion is contradicted by another medical opinion, an ALJ must give "specific and legitimate reasons" for rejecting it.  *Orn*, 495 F.3d at 633.  If a treating physician's opinion is not contradicted, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830.

## 2.  Dr. Flores' Opinion

Dr. Flores evaluated, and eventually treated, Plaintiff as part of her workers' compensation claim.  In the initial psychological consultation report, dated May 26, 2010, Dr. Flores found that Plaintiff's psychomotor activity was normal without evidence of psychomotor agitation or retardation; her speech pattern was soft and emotional; her mood was sad and anxious; her affect was appropriate to the content of her thoughts; her thought content was focused with preoccupation about her somatic pain, physical symptoms and financial circumstances; her intellectual functioning appeared to be average, but appeared to be impacted by her emotional condition; she was alert and oriented to person, place and time; she demonstrated difficulty remembering recent dates and the sequence of events; her concentration was at times deficient during the evaluation; her insight was intact; and her judgment was good.  (AR 520-21.)  Dr. Flores diagnosed Plaintiff with major depressive disorder, single episode, moderate; generalized anxiety disorder; insomnia related to generalized anxiety disorder; psychological factors affecting medical condition, headaches; and high blood pressure, gastrointestinal disturbances.  (AR 521-22.)  He assigned Plaintiff a GAF score of 51, indicating moderate symptoms. (AR 522.)  He determined that Plaintiff was temporarily totally disabled, and recommended an intensive course of cognitive-behavioral psychotherapy, including individual psychotherapy and supportive group psychotherapy, relaxation training, and hypnotherapy.  (AR 523-24.)  He referred Plaintiff to a psychiatrist to consider the use of psychotropic medications to treat her anxiety and depressive symptoms, and her sleep disorder.  (AR 524.)

On June 23, 2010, Dr. Flores issued a psychological testing report, outlining the results of a battery of psychological tests administered to Plaintiff on May 26 and June 16, 2010.  (AR 555-59.)  The testing indicated a severe range of symptoms of anxiety and depression; intellectual testing within the 12th percentile relative to people Plaintiff's age; and signs of anxiety, depression, poor self-image,

and a tendency to be socially withdrawn.  (AR 556-57.)  Dr. Flores found that the test results supported the complaints, clinical findings, and his diagnostic impression of Plaintiff.  (AR 558.)

Plaintiff participated in treatment in the form of medication and psychotherapy with Dr. Flores and a psychiatrist.  (AR 529-31, 551-52, 1786.)  In progress reports related to Plaintiff's workers' compensation case, dated between January 2011 and September 2013, Dr. Flores reported that Plaintiff was to remain off-work.  (AR 529-34, 560-62, 682-84, 679-81, 1255, 1257-58, 1441-43, 1449, 1453-55, 1868-69, 1871-72.)  In March 2011, Dr. Flores certified to the Employment Development Department that Plaintiff's "depressive and anxiety condition make her unable to work at this time."  (AR 499.)

On May 28, 2012, Dr. Flores completed a mental impairment questionnaire.  (AR 1261-66.)  He stated that the frequency of contact was twice a month.  (AR 1261.)  Plaintiff was diagnosed with major depressive disorder, moderate, and was being treated with psychiatric treatment, cognitive-behavioral psychotherapy, and medication.  (*Id.*)  He listed clinical findings of depressed affect and anxious mood, and attention and memory problems.  (*Id.*).  He identified the following signs and symptoms:  anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; apprehensive expectation; memory impairment; and sleep disturbance.  (AR 1262.)  He opined that Plaintiff was unable to meet competitive standards in most mental abilities and aptitudes needed to do unskilled work, semiskilled work, and skilled work.  (AR 1263-64.)  He opined that Plaintiff was seriously limited to unable to meet competitive standards in her ability to interact appropriately with the general public, seriously limited in her ability to travel in an unfamiliar place, and limited in her ability to maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation.  (AR 1264.)  He opined that Plaintiff had

7

1    moderate restriction of activities of daily living; moderate to marked difficulties in
2    maintaining social functioning; marked deficiencies of concentration, persistence or
3    pace; and no repeated episodes of decompensation within a 12 month period, each
4    of at least two weeks duration.  (AR 1265.)  He opined that Plaintiff would be
5    absent from work more than four days per month as a result of her impairments or
6    treatment, and that Plaintiff's symptoms and limitations applied as of May 26,
7    2010.  (AR 1265-66.)

8          On September 20, 2012, Dr. Flores completed a supplemental permanent and
9    stationary medical records review and a supplemental psychological testing report –
10   permanent and stationary – regarding testing performed on that date.  (AR 1405-
11   16.)   The testing assessed Plaintiff's psychological functioning after her
12   participation in psychotherapy.  (AR 1407.)  The testing indicated body tension and
13   apprehension, normal speech pattern, no perceptual or thought disorder, and no
14   indication of neuropsychological disturbances.  (*Id.*)  The test data suggested that
15   Plaintiff's intellectual functioning was impacted by her symptoms, and that Plaintiff
16   continued to report clinical symptoms of anxiety and depression.  (*Id.*)  Dr. Flores
17   found that the test data supported Plaintiff's complaints, her subjective perception
18   of improvement, and his diagnostic and clinical impression that Plaintiff was
19   experiencing severe symptoms of depression and anxiety at the time of his report.
20   (AR 1407, 1415.)   Dr. Flores opined that Plaintiff was in need of continued
21   psychotherapy and psychiatric care for her serious symptoms of depression and
22   anxiety that continued "to significantly impact her ability to return to the labor
23   force."  (AR 1414.)  Dr. Flores noted Plaintiff's persistent death thoughts and
24   suicidal ideas that took place two months prior to his report.  (*Id.*)

25         On April 16, 2013, Dr. Flores completed a primary treating physician's
26   progress report.  (AR 1784-88.)  He found Plaintiff's mood sad, and noted that she
27   was nervous and apprehensive.  (AR 1785.)   His diagnoses and GAF score
28   remained the same as in May 2010.  (*Id.*)  Dr. Flores noted that Plaintiff maintained

8

"significant levels of depression and death thoughts" over the course of her treatment, and she continued to "experience significant impairment in her activities of daily living." (AR 1786.) He noted particular concern about Plaintiff developing suicidal ideas and successfully committing suicide, and stated that Plaintiff "should be considered a high risk patient." (AR 1786-87.) Dr. Flores opined that Plaintiff "w[ould] not be able to return to work at this time." (AR 1788.) Dr. Flores deferred to Dr. Davis "all medical determinations with regard to diagnosis, disability, causation, apportionment, vocational rehabilitation, and future medical needs," as well as work status. (*Id*.)

### 3. The ALJ's Decision

The ALJ gave little weight to Dr. Flores' opinion that Plaintiff should remain off-work due to depression and anxiety, and that Plaintiff had marked limitations in several functioning abilities. (AR 26.) The ALJ found Dr. Flores' opinion inconsistent with "his own examination [which] noted good eye contact, normal gait, no evidence of psychomotor agitation or retardation, soft and emotional speech, but appropriate affect, focused thought content, average intellectual functioning, no suicidal or homicidal ideation, alert, orientation times three, adequate reality contact, no disturbance of consciousness, and good insight/judgment," and "his own progress notes, where he noted that [Plaintiff's] conditions were improving." (*Id.*) The ALJ also noted that Dr. Flores "deferred 'work status' to . . . Dr. Davis" by April 2013. (*Id.*)

### 4. Discussion

An ALJ may discount a treating physician's opinion when it is contradicted by the treating physician's own medical records.[3] *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). However, minor inconsistencies in a physician's

---

[3] Although Plaintiff does not argue that Dr. Flores was a treating physician, the record shows that Dr. Flores participated in Plaintiff's treatment, seeing her approximately twice a month. (*See, e.g*., AR 1261, 1453-55, 1786.)

opinion do not constitute a sufficient reason to reject it.  *See Sprague v. Bowen*, 812 F.2d 1226, 1230-31 (9th Cir. 1987).  Furthermore, an ALJ may not manufacture a significant conflict where a review of the medical evidence over the entire relevant time period suggests otherwise.  *See, e.g., Garrison*, 759 F.3d at 1013 (ALJ improperly created conflict by asserting that claimant's treating physician's records showed consistent improvement when they actually showed consistent radiculopathy which responded only very briefly and partially to treatment).  Nor may an ALJ "improperly cherry-pick[ ]" or selectively reference only a non-representative treatment note or notes to support a conflict with a treating physician's opinion. *See, e.g., Ghanim*, 763 F.3d at 1162 n.6, 1164 (ALJ's example of one note, out of more than one hundred pages, was not substantial evidence of a conflict between the treatment notes and opinions regarding the severity of the plaintiff's impairments).

Plaintiff argues that the ALJ ignored "[k]ey pieces of the mental examination," and that notes of improvement must be read in context.  (Joint Stip. at 8-9.)  The Court agrees.

Although the ALJ noted some of Dr. Flores' examination findings, her references were selective and incomplete.  The ALJ did not mention Dr. Flores' findings that Plaintiff's mood was sad and anxious, her intellectual functioning appeared to be impacted by her emotional condition, her memory was impaired, and her concentration was at times deficient.  (AR 25-26, 520-21.)  Dr. Flores reiterated these same findings in the mental impairment questionnaire, which the ALJ found inconsistent with his findings.  (AR 26, 1261.)  The ALJ also failed to discuss the results of the psychological testing, which indicated a severe range of symptoms of anxiety and depression, and which Dr. Flores found to support Plaintiff's complaints, her subjective perception of improvement, and his diagnostic and clinical impression.  (AR 556-57, 1406-07.)  The ALJ did not mention that Dr. Flores expressed concern about Plaintiff's suicidal ideas, and labeled her a "high

risk patient." (AR 1787.) Even when Dr. Flores indicated that Plaintiff reported that her sleep and mood improved with medication, he retained the same diagnoses, indicated that Plaintiff's mood was still sad, and opined that her symptoms affected her subjective perception of improvement. (AR 532-33, 560-61, 679, 682, 1257, 1407, 1785.) Moreover, just because a person suffering from severe mental health issues exhibits some improvement does not necessarily mean that her impairments no longer affect her ability to function in the workplace. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (citation omitted). The Commissioner argues only that an ALJ may properly discount a treating physician's opinion on the basis of a conflict with treatment records or lack of support by objective findings, but does not rebut Plaintiff's argument that the ALJ's decision was missing key evidence from Dr. Flores' examination and treatment notes.

The Court finds that the ALJ selectively referenced only non-representative examination findings and treatment notes to support her finding. *Ghanim*, 763 F.3d at 1162 n.6, 1164. While the ALJ need not discuss each piece of evidence in the record, *Howard ex re. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), she is required to view evidence "in light of the overall diagnostic record." *Ghanim*, 763 F.3d at 1164 (citations omitted); *see also Reddick*, 157 F.3d at 725 (ALJs satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and *conflicting clinical evidence*, stating his interpretation thereof, and making findings") (emphasis added). Here, it does not appear that the ALJ has done so. Therefore, the Court finds that the ALJ improperly discounted the opinion of Dr. Flores based on an inconsistency with his examination findings and progress entries.

Plaintiff also argues that the ALJ misinterpreted Dr. Davis' opinion, and therefore, it was error to reject Dr. Flores' opinion on the ground that Dr. Flores deferred work status to Dr. Davis. (Joint Stip. at 9.) The Court agrees.

11

The ALJ inaccurately interpreted Dr. Davis' December 14, 2011 opinion. The ALJ noted that Dr. Davis opined that Plaintiff could "return to her past work as an accountant but not work under the supervision of one particular individual, . . . and reduce her workload about 20%, which is still 8 hours a day because she used to work '10-12 hours' a day." (AR 27.)  Dr. Davis actually expressed "very serious reservations" about whether Plaintiff would be able to function capably when she returned to work, and made it clear that he was declaring her Permanent and Stationary per her wishes to keep her job.  (AR 1370-71.)  He thought it "imperative" that Plaintiff not work under her previous supervisor should she return to her previous job.  (*Id.*)  He also opined that during the first month of work, Plaintiff should work "four hours per day rather than an eight hour day," with the workload and work pace reduced 80% during the four hours.  (*Id.*)  He opined that "should [Plaintiff] feel capable of" increasing her work hours to eight hours per day, she could do so; and Plaintiff's workload and work pace should remain reduced 20% from what it was in February 2010 until Plaintiff felt she could handle a heavier workload, if ever.  (AR 1372.)  The ALJ mischaracterized Dr. Davis' opinion as stating that Plaintiff could work eight hours a day at her past job.  (AR 27, 1371-72.)  Thus, the ALJ's reliance on Dr. Flores' deferral of work status to Dr. Davis, who did not opine that Plaintiff could return to full-time work, is not a sufficient reason for discounting Dr. Flores' opinion.

Remand is warranted so that the ALJ can properly evaluate Dr. Flores' opinion.

**B.** **The ALJ Erred In Evaluating Plaintiff's Subjective Complaints**

**1.** **Plaintiff's Testimony**

At the administrative hearing, Plaintiff testified that she quit working at her last job as an accountant because she became "very sick" with terrible headaches, dizziness, lack of focus and concentration, nervousness, pain in her neck and arms, "hands cannot work," and inability to sit down because of back pain.  (AR 104.)

12

She testified that she has "a very severe depression, nervous." (AR 114.) She sometimes "break[s] down," worries, cannot sleep, gets dizzy, cannot remember "anything," and has whole body pain. (*Id.*) She does not know what is going on when she turns on the television. (*Id.*) She cannot read or use the internet due to severe headaches. (*Id.*) She does not go shopping, go to the movies, or do any social activities. (AR 114-15.) She goes to church once a month if her roommate takes her. (AR 115.) Her roommate goes shopping and cooks for her because she "almost burn[ed] the house" when she cooks. (AR 114-15.) The heaviest things she can lift are a cup, a bowl, or a gallon of milk. (AR 116-17.) She can look down for 15 or 20 minutes before her neck hurts. (AR 116.) She can type for 20 or 30 minutes before having pain in her hands. (AR 117.) Her medication makes her feel "very dizzy" three or four times a week. (AR 118.) The dizziness lasts between two hours to all day. (*Id.*) On the days she wakes with a headache, she "cannot work anything because after taking the medication I lay down" due to drowsiness. (AR 119.) She can dress herself, but only gets dressed if she is going out. (AR 119-20.) She washes her hair only when she goes to the doctor. (AR 119.)

In a Function Report dated February 18, 2011, Plaintiff reported that she does not get up until 10 a.m. because she does not sleep well. (AR 322.) She needs reminders to take a bath, take her medication, and go to the doctor. (AR 324, 326.) She does not cook due to forgetfulness, fatigue, pain, and lack of desire to cook. (AR 324.) She does not do household chores or yard work due to pain and lack of motivation. (AR 325.) She can drive and go out alone. (*Id.*) She is no longer able to pay bills, count change, handle a savings account, or use a checkbook or money orders. (*Id.*) She is not motivated or interested in hobbies anymore. (AR 326.) She has problems getting along with others because she gets easily agitated or mad. (AR 327.) She has no social activities. (*Id.*) She can walk one block before needing to rest, and she can pay attention for 15 to 20 minutes. (*Id.*) She is scared of noise and talking to herself. (AR 328.)

13

1

**2.     Applicable Legal Standards**

2

"In assessing the credibility of a claimant's testimony regarding subjective

3

pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*

4

*v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d

5

586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has

6

presented objective medical evidence of an underlying impairment which could

7

reasonably be expected to produce the pain or other symptoms alleged." *Treichler*

8

*v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting

9

*Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the

10

ALJ does not find evidence of malingering, the ALJ must provide specific, clear

11

and convincing reasons for rejecting a claimant's testimony regarding the severity

12

of his symptoms.  *Id*.  The ALJ must identify what testimony was found not

13

credible and explain what evidence undermines that testimony.  *Holohan*, 246 F.3d

14

at 1208.  "General findings are insufficient." *Lester*, 81 F.3d at 834.

15

**3.     Discussion**

16

"After careful consideration of the evidence," the ALJ found that Plaintiff's

17

"medically determinable impairments could reasonably be expected to cause the

18

alleged symptoms;" but found that Plaintiff's "statements concerning the intensity,

19

persistence and limiting effects of these symptoms are not entirely credible for the

20

reasons explained in this decision."  (AR 23.)  The ALJ relied on the following

21

reasons:    (1) physical and mental examinations suggested malingering; (2)

22

Plaintiff's need for an interpreter at the hearing was "questionable;" (3) Plaintiff

23

made inconsistent statements regarding her use of alcohol; and (4) Plaintiff's

24

allegation of inability to work was inconsistent with her statement that she was

25

willing to work.  (AR 27.)

26

**a.  Reason No. 1:  Suggestions of Malingering**

27

The ALJ discounted Plaintiff's credibility because "physical and mental

28

examinations suggested malingering," noting that a consultative examiner, Dr.

14

Ross, found Waddell's sign to be positive with unremarkable x-rays, and another examining physician, Dr. Kelly, commented that Plaintiff had an exaggerated response/overstatement of symptoms in excess as well as positive Waddell's signs. (AR 27, 1315, 1323.)   However, Dr. Davis directly addressed Dr. Kelly's evaluation and explained that Plaintiff was not deliberately exaggerating or faking her symptoms; rather, she had a pain disorder.  (AR 1367.)  He stated that Plaintiff was somatizing "to a significant degree," which means that "instead of feeling painful emotions, (such as anger, grief or guilt), the inexperienced painful emotion is unconsciously changed into increased pain, via somatization, which causes subjectively increased pain and impairment in functioning, well above and beyond that reasonable for the objective orthopedic findings."   (*Id.*)   Dr. Davis also addressed Plaintiff's exaggerated scores in the psychological testing.  (AR 1080.) He explained that "[d]epressed patients often don't have the energy and they can't concentrate well enough to take each question seriously," and that symptom embellishment "is often seen in depressed individuals and it doesn't necessarily imply malingering."  (*Id.*)  He further stated that Plaintiff's "symptom exaggeration is probably due to [her] depression and her self-critical and pessimistic attitude, secondary to it."  (AR 1112.)  Accordingly, the ALJ's findings of malingering are not supported by substantial evidence, and the ALJ's reasons for discounting Plaintiff's credibility must still be "clear and convincing."

### b.  Reason No. 2:  Need For An Interpreter

The ALJ questioned Plaintiff's need for an interpreter at the hearing, as "she is a college graduate, who obtained [a] B.S. in finance and accounting, and worked as an accountant, handling up to 26 accounts at one point."[4]  (AR 27.)  Plaintiff testified that she needed the interpreter to interpret at the hearing just when she did

---

[4] Notably, it was the same ALJ who was "uncomfortable going forward with[out] an interpreter when [Plaintiff] requested one," and encouraged the continuation of the July 16, 2012 hearing to secure the presence of an interpreter.  (AR 132-33.)

1   not understand something.  (AR 102.)  Plaintiff's "periodic need for a translator
2   does not impugn [her] credibility."  *Ghanim*, 763 F.3d at 1164.  Further, that
3   Plaintiff had some language barriers and previously used an interpreter is supported
4   by the record.  Dr. Davis noted that Plaintiff "spoke some English, but the interview
5   was performed primarily in Vietnamese, with the assistance of an excellent
6   interpreter."  (AR 1058.)  Dr. Flores noted that his evaluation was performed with
7   the assistance of a Vietnamese translator.  (AR 509.)

8        The Court finds that this reason is not a clear and convincing reason,
9   supported by substantial evidence, to discount Plaintiff's credibility.

10        **c.  Reason No. 3:     Inconsistent Statements Regarding**
11             **Alcohol Use**

12        The ALJ noted that at the hearing, Plaintiff admitted to drinking "sometimes
13   once a week," but she previously denied the use of alcohol to several examining
14   physicians.  (AR 27, 549, 1336.)  Inconsistent testimony concerning alcohol use can
15   support an adverse credibility finding.  *Robbins*, 466 F.3d at 884.  The records cited
16   by the ALJ were from July 2010 and December 2011 examinations.  (AR 27.)
17   Plaintiff's testimony in January 2014 that she sometimes drank alcohol is not
18   necessarily inconsistent with her statements from over two years prior that she did
19   not use alcohol.  Her depression and anxiety are documented as getting
20   progressively worse through April 2013, and it is not unreasonable that Plaintiff
21   may have started to use alcohol by the time of the hearing.  (AR 1787.)  She
22   testified that she drinks when she is "very sad."  (AR 106.)

23        The Court finds that this reason is not a clear and convincing reason,
24   supported by substantial evidence, to discount Plaintiff's credibility.

25        **d.  Reason No. 4:  Willingness to Work**

26        The ALJ noted that "despite [Plaintiff's] allegation of inability to work, she
27   informed Dr. Davis, an AME, that she was willing to work as long as she does not
28   work under the supervision of Mr. Trang and that she probably would be qualified

for some positions." (AR 27.)  In December 2011, Plaintiff indicated to Dr. Davis that she "thinks she needs to get to work soon" so she would not lose her job. (AR 1338.)  When Dr. Davis asked if she could return to work under a different supervisor, Plaintiff replied that she did not think so, but she was willing to work in a different department so she would not have to work under her former supervisor. (AR 1338.)  As Plaintiff argues, her willingness to work does not mean that she could actually work. (Joint Stip. at 31.)  This is not a situation where Plaintiff held herself out to be capable of work by receiving unemployment benefits. *See Lamb v. Colvin*, 2013 WL 4039446, at \*2 (C.D. Cal. Aug. 7, 2013) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) ("receipt of unemployment benefits is valid reason for discounting claimant's credibility, as it indicates claimant considered himself to be capable of work and that he held himself out as being available therefor")).  Plaintiff received Workers' Compensation Temporary Disability benefits (AR 1338), which pays partial wages while a claimant recovers from a job injury and *cannot do her usual work*. *See Temporary Disability Benefits*, California Department of Industrial Relations, http://www.dir.ca.gov/dwc/Temporary Disability.htm (last visited Sept. 7, 2016).

The Commissioner's argument that Plaintiff "appears capable of working" is unsupported. (Joint Stip. at 35.)  As discussed above, Dr. Flores opined that Plaintiff was unable to work, and indeed, Plaintiff remained off work through the time of the hearing. (AR 104, 499, 1255, 1257-58, 1261-66, 1442, 1449, 1787-88.)

The ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility.  Accordingly, remand is warranted on this issue.

### C.    The Court Declines To Address Plaintiff's Remaining Argument

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ failed to resolve a conflict with the DOT at Step Five. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because

1   we remand the case to the ALJ for the reasons stated, we decline to reach
2   [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v.*
3   *Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not
4   address the other claims plaintiff raises, none of which would provide plaintiff with
5   any further relief than granted, and all of which can be addressed on remand.").

### D.   Remand For Further Administrative Proceedings

7        Because further administrative review could remedy the ALJ's errors,
8   remand for further administrative proceedings, rather than an award of benefits, is
9   warranted here.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015)
10  (remanding for an award of benefits is appropriate in rare circumstances).  Before
11  ordering remand for an award of benefits, three requirements must be met:  (1) the
12  Court must conclude that the ALJ failed to provide legally sufficient reasons for
13  rejecting evidence; (2) the Court must conclude that the record has been fully
14  developed and further administrative proceedings would serve no useful purpose;
15  and (3) the Court must conclude that if the improperly discredited evidence were
16  credited as true, the ALJ would be required to find the claimant disabled on
17  remand.  *Id.* (citations omitted).  Even if all three requirements are met, the Court
18  retains flexibility to remand for further proceedings "when the record as a whole
19  creates serious doubt as to whether the claimant is, in fact, disabled within the
20  meaning of the Social Security Act."  *Id.* (citation omitted).

21       Here, remand for further administrative proceedings is appropriate.  On
22  remand, the ALJ shall (1) reassess the opinion of Dr. Flores and provide legally
23  adequate reasons for discounting or rejecting any portion of the opinion; and (2)
24  reassess Plaintiff's subjective allegations.  The ALJ shall then reassess Plaintiff's
25  RFC, if warranted, and proceed through steps four and five to determine what work,
26  if any, Plaintiff is capable of performing.

27  ///

28  ///

1

## V.     <u>CONCLUSION</u>

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED:  September 9, 2016         _____
                                  ROZELLA A. OLIVER
                                  UNITED STATES MAGISTRATE JUDGE



## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**